Jonathan G. Basham, OSB #90038
E-Mail: jgbasham100@bendbroadband.com
Jonathan G. Basham, P.C.
745 NW Mt. Washington Drive #308
Bend, OR 97701
Telephone: 541.385.0914
Facsimile: 541.385.0988
Attorney for RTT Corporation, an Oregon Corporation

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| RTT CORPORATION, an Oregon corporation, doing business as Rocky Mountain Products,<br><br>Plaintiff,<br><br>v.<br><br>BRENNTAG PACIFIC, INC., a Delaware corporation,<br><br>Defendant. | Civil No.: 08-CV-6291-AA<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT** |

Plaintiff, by and through its attorney Jonathan G. Basham, respectfully files this response to defendant's motions for partial summary judgment.

### I. POINTS AND AUTHORITIES

**A.    Disputed Facts.**

Defendant Brenntag Pacific, Inc. ("Brenntag") has mischaracterized several material issues of fact in dispute as "undisputed." Plaintiff RTT Corporation ("RTT") disputes that Brenntag's terms and conditions governed and controlled Brenntag's sale of products to RTT

and its predecessors[1]. (Response to Concise Statement, ¶ 4.) RTT also disputes that there were no other contractual terms and conditions between RTT and Brenntag. (*Id.*) Furthermore, RTT contends that since Brenntag at times included its terms and conditions and at other times did not, the terms and conditions did, in fact, change over the course when Brenntag sold the Malaysian sorbitol to ROCKY MOUNTAIN PRODUCTS. (*Id.*, at ¶ 4, 7, 9.)

Although RTT agrees that approximately one-half of the time a dock worker for ROCKY MOUNTAIN PRODUCTS signed Brenntag's bill of lading at the time of delivery and that the bill of lading purported to have such dock worker bind ROCKY MOUNTAIN PRODUCTS to Brenntag's terms and conditions printed on the back side of such bill of lading, the terms and conditions were in very small print and unreadable. (*Id.*, ¶ 7-8.)

While RTT agrees that Brenntag's terms and conditions contained a limitation of liability, it is undisputed that at no time did Brenntag negotiate the terms and conditions with anyone at ROCKY MOUNTAIN PRODUCTS or even inform anyone at ROCKY MOUNTAIN PRODUCTS of Brenntag's terms and conditions. (*Id.*, ¶ 4) RTT denies even knowing about such terms and conditions until Brenntag filed its answer in this case. (*Id.*)

Had Brenntag alerted anyone at ROCKY MOUNTAIN PRODUCTS to Brenntag's terms and conditions, ROCKY MOUNTAIN PRODUCTS would have purchased its chemicals from a different distributor. It had been able to get such chemicals from Brenntag's predecessor Quadra Chemical, Inc. ("Quadra") without waiving any claims or limiting its damages and would have been able to do so again with another distributor. (*Id.*, ¶ 16.)

---

[1] From 1992 through 2003, TTG Co., Inc. did business as Rocky Mountain Products. In July of 2003, RMI, LLC acquired all of the assets of TTG Co., Inc. and thereafter did business as Rocky Mountain Products. In January of 2006, RTT Corporation acquired all of the assets of RMI, LLC and thereafter did business as Rocky Mountain Products. At all times, my Todd Goodew and his wife Tama Goodew were the principals of TTG Co., Inc., RMI, LLC, and RTT Corporation as those companies did business as Rocky Mountain Products. Joyce Lancaster at all times was the office manager of TTG Co., Inc., RMI, LLC, and RTT Corporation. Hereinafter, "ROCKY MOUNTAIN PRODUCTS." shall refer to TTG Co., Inc., RMI, LLC, and RTT Corporation individually and collectively. Aff. of Todd Goodew, ¶ 1.

**Jonathan G. Basham, P.C.**

745 NW Mt. Washington Drive #308
Bend, OR 97701
Telephone: 541.385.0914

**PLAINTIFF'S RESPONSE TO DEFENDANT'S    Page 2
MOTION FOR PARTIAL SUMMARY JUDGMENT**

### B.  Undisputed Facts.

What is undisputed is the following:

1. That ROCKY MOUNTAIN PRODUCTS purchased sorbitol from Quadra from at least 2001 through 2005 without any limitation of liability, remedy or waiver of warranty. (*Id*., ¶ 4.)

2. That Sam DeBellis, Jr. was the sales person/Branch Manager at Quadra with whom ROCKY MOUNTAIN PRODUCTS did business.  (*Id.*)

3. That in late October of 2005, when Brenntag acquired Quadra, Brenntag retained Sam DeBellis, Jr. as Branch Manager and Sam DeBellis, Jr. continued to be the primary source of contact with ROCKY MOUNTAIN PRODUCTS for the sale of sorbitol from October 2005 through 2008.  (*Id.*)

4. That no one at Brenntag, including Sam DeBellis, Jr., informed ROCKY MOUNTAIN PRODUCTS that Brenntag was imposing any terms and conditions for its sales that were different from the terms and conditions ROCKY MOUNTAIN PRODUCTS had with Quadra.  (*Id.*)

5. That Brenntag did not negotiate any of its terms and conditions with ROCKY MOUNTAIN PRODUCTS. (*Id*.)

6. That even as late as December of 2006, before Brenntag began shipping the Malaysian sorbitol to RTT, Sam DeBellis, Jr., on behalf of Brenntag, gave no warning to RTT that the terms and conditions under which Brenntag was operating differed in any way from the terms and conditions under which Quadra had operated.  (*Id.*)

### C.  **RTT Is Entitled to Maintain Product Liability[2] and UCC Claims Simultaneously**

Brenntag appears to make the astounding and unsupported argument that a party may not

---

[2] RTT believes that it does have a product liability claim against Brenntag as well as PT Sorini and Meelunie America.  RTT will likely be filing a motion to add such additional parties and will seek to amend its complaint to add the implied, but not expressly pled, allegation that the Malaysian sorbitol was unreasonably dangerous to property.

**Jonathan G. Basham, P.C.**

745 NW Mt. Washington Drive #308
Bend, OR 97701
Telephone: 541.385.0914

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**     **Page 3**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

maintain both a product liability claim and a breach of warranty claim in the same action. Brenntag mistakenly relies on *Marinelli v. Ford Motor Co.*, 72 Or App 268, 273, 696 P2d 1, *rev. den.*, 299 Or 251, 701 P2d 784 (1985); *Simonsen v. Ford Motor Co.*, 196 Or App 460, 466 (2004), *rev. denied*, 338 Or 681 (2005); and *Kambury v. DaimlerChrysler Corp.*, 185 Or App 635 (2003), which all considered the applicability of the claim bar date under ORS 30.905. Brenntag's argument flies in the face of ORS 30.920(4), which provides:

> Nothing in [ORS 30.920] shall be construed to limit the rights and liabilities of sellers and lessors under principles of common law negligence **or under ORS chapter 72**.

(Emphasis added). Brenntag's argument also fails to take into account *Gladhardt v. Oregon Vineyard Supply Co.*, 164 Or App 438, 994 P2d 134 (1999), *rev'd on other grounds*, 332 Or 226, 26 P3d 817 (2001), which closely resembles the facts in this case.

The *Gladhardt* case involved the sale of grape vines to a company with a vineyard. The grape vines contained a toxic substance that threatened to destroy not only the infected vines, but all of plaintiff's crop. Although the *Gladhardt* Court dismissed the breach of warranty claims, it did so because of the applicable UCC statute of limitations, not because Oregon's product liability statute precluded an alternate breach of warranty claim.

A product liability claim (involving no promise or contract) is a separate claim from a breach of warranty claim. *See Gladhardt*, *supra*; *see also Denny v. Ford Motor Co.*, 87 NY2d 248, 662 NE2d 730, 639 NYS2d 250 (1995). *See also Hauter v. Zogarts*, 14 Cal. 3d 104, 120 Cal. Rptr. 681, 534 P.2d 377 (1975)(holding that a party may recover on both a product liability claim and a breach of implied warranty claim).

Strangely, Brenntag first argues that RTT's claims must be viewed as product liability claims where mere economic damages are not recoverable, and then argues that RTT merely claims economic damages. What Brenntag ignores is that if Oregon's product liability statute is not available to plaintiff because of the economic loss doctrine, such unavailability reinforces RTT's UCC claims.

In *Seely v. White Motor Co.*, 63 Cal.2d 9, 403 P.2d 145, 45 Cal.Rptr. 17 (1965), Justice

Traynor reasoned that to permit recovery for mere economic loss on a product liability claim would swallow the law of warranty. The *Seely* court rejected the plaintiff's product liability claim, holding that the law of sales under the UCC governed economic relationships among suppliers and consumers and that the law of strict liability was not meant to undermine the UCCs warranty provisions. The *Seely* decision was approved by the Ninth Circuit in *Aris Helicopters Ltd. v. Alison Gas Turbine*, 932 F2d 825 (9th Cir 1991).

Thus, where a products liability claim is not available because the damages involve injuries only to the product itself, a breach of warranty claim under the uniform commercial code is still available where privity of contract exists between the parties. *See generally Monsanto Agricultural Products Co. v. Edenfield*, 426 So2d 574, 576 (Fla. 1st DCA 1983).

### D. Even If RTT's Claims Are Product Liability Claims, RTT Has Alleged More Than Mere Economic Loss

ORS 30.900 provides that a "product liability civil action" means a civil action brought against a manufacturer, distributor, seller or lessor of a product for damages for personal injury, death or <u>property damage</u> arising out of:

(1) Any design, inspection, testing, manufacturing or other defect in a product;

(2) Any failure to warn regarding a product; or

(3) Any failure to properly instruct in the use of a product.

(Emphasis added). In *Gladhardt*, *supra*, the Court found that if the alleged defective product caused damage to <u>other property</u>, the elements of ORS 30.900 are satisfied. *See also Russell v. Deere & Co.*, 186 Or App 78, 61 P3d 955 (2003)(<u>question of whether a product is unreasonably dangerous to property is a question for the jury</u> unless the only damage is economic loss to the defective product itself).

In this case, RTT has alleged more than mere economic loss to the sorbitol itself. RTT has alleged in its complaint that it combined the sorbitol Brenntag sold to RTT in its spices (Complaint, ¶ 7.); that RTT's customers began rejecting RTT's spices that contained Brenntag's sorbitol (Complaint, ¶ 10.); that Brenntag's sorbitol began breaking down chemically, producing

moisture and causing significant clumping of the spice mixture, making the product appear that it had spoiled (Complaint, ¶ 11.); and that RTT suffered other damages as a result of the rejected spice mixtures. (Complaint, ¶ 14.)

Based on the foregoing, Brenntag's motion must be denied.

### E.     The Court Should Find that Brenntag's Terms and Conditions Are Unenforceable.

While RTT's complaint alleges that Brenntag supplied RTT with defective sorbitol, RTT has adequately pled a cause of action for breach of contract and breach of warranty. Whether this Court relies on California law or Oregon law, the Court should find that Brenntag's terms and conditions are inconspicuous, unconscionable, and unreasonable and therefore unenforceable.

#### 1.     Brenntag's Terms and Conditions Were Inconspicuous.

A seller/distributor may limit an implied warranty under ORS 72.3160. However, the waiver must be conspicuous and not unreasonable.

> [T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing <u>must be conspicuous</u>, and to exclude or modify any implied warranty of fitness the exclusion <u>must be by a writing and conspicuous</u>. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

ORS 72.3160(2)[3] (emphasis added). In *Seibel v. Layne & Bowler, Inc.*, 56 Or App 387, 641 P2d 668 (1981), the Court faced a similar one-sided, non-negotiated limitation of liability printed on the back of a sales contract. Given the small print of the limitation and the lack of differentiation of print, the Court found that the seller's disclaimers were not conspicuous and therefore not enforceable. California Courts have similarly invalidated attempts to limit warranties when a

---

[3] Cal U Com Code § 2316(2) is identical to ORS 72.3160(2). Cal U Com Code § 2316(3)(b) and ORS 72.3160(3)(b) go on to state that if a "buyer before entering into the contract has examined the goods or the sample or model as fully as he [the buyer] desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him [the buyer]." In this case, the defect in Brenntag's Malaysian sorbitol was latent and could only be observed months after it had been purchased, accepted, and added to RTT's other spices. (Aff. of Todd Goodew, ¶ 9-10.)

seller did not conspicuously disclaim such warranties. *See, e.g., Hauter v. Zogarts*, 14 Cal. 3d 104, 120 Cal. Rptr. 681, 534 P.2d 377 (1975). As the *Hauter* Court clearly noted: "Although the parties are free to write their own contract (*Delta Air Lines, Inc. v. Douglas Aircraft Co.* (1965) 238 Cal.App.2d 95, 100 [47 Cal.Rptr. 518]), the consumer must be placed on fair notice of any disclaimer or modification of a warranty and must freely agree to the seller's terms. *(Dobias v. Western Farmers Association* (1971) 6 Wn.App. 194 [491 P.2d 1346, 1350].) 'A unilateral nonwarranty cannot be tacked onto a contract containing a warranty.' (Klein v. Asgrow Seed Co. (1966) 246 Cal.App.2d 87, 97 [54 Cal.Rptr. 609].)" *Hauter*, 14 Cal. 3d at 119-120, 120 Cal Rptr. at 690-691, 534 P.2d at 386-387 (citations in original).

In this case, Brenntag's terms and conditions were similarly printed on the back side of its invoices and bills of ladings with very small type. During Sam DeBellis, Jr.'s deposition, Mr. DeBellis confessed that the photocopy of Brenntag's terms and conditions attached as Exhibit C to the affidavit he filed in support of Defendant's Motion for Summary Judgment was difficult to read. That exhibit was a copy of the back side of one of the bills of lading left with RTT upon which Brenntag relies for its motion. Pages 1, 2, and 19 of Mr. DeBellis' deposition are attached hereto as Exhibit A and incorporated by reference herein.

Because of the very small type, even the capitalization of certain portions of Brenntag's disclaimer do not stand out. This Court should find as a matter of law that Brenntag's disclaimers in its terms and conditions are not conspicuous and therefore not enforceable.

### 2.    Brenntag's Terms and Conditions Were Procedurally Unconscionable.

A seller/distributor may limit a buyer's damages under ORS 72.7180, provided such limitation is reasonable and not unconscionable.

ORS 72.7180[4] provides:

---

[4] Cal U Com Code § 2718 provides: "Damages for breach by either party may be liquidated in the agreement subject to and in compliance with Section 1671 of the Civil Code. If the agreement provides for liquidation of damages, and such provision does not comply with Section 1671 of the Civil Code, remedy may be had as provided in this division." Cal Civil Code § 1671(b) provides: "[A] provision in a contract liquidating the damages for the breach of the

> Damages for breach by either party may be liquidated in the agreement but only at an amount which is <u>reasonable</u> in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy.

(Emphasis added). Furthermore, ORS 72.7190(3)[5] provides:

> Consequential damages may be limited or excluded <u>unless the limitation or exclusion is unconscionable</u>.

(Emphasis added). Courts strictly construe contractual clauses seeking to limit liability and resolve any ambiguities against the party seeking to limit liability. *Nunes Turfgrass, Inc. v. Vaughan-Jacklin Seed Co.*, 200 Cal App 3d 1518, 246 Cal Rptr 823 (1988).

In *Nunes*, the Court found, <u>unlike the facts in this case</u>, that:

- The plaintiff knew, read, understood and even had similar restrictions in its own contracts.
- The limitations of liability were certainly part of the agreement between the parties.
- The plaintiff knew that defendant would not have sold the defective product to plaintiff at the contract price without the limitation.
- The limitations were not unconscionable under all the circumstances.

The case now before this Court could not be more different than the *Nunes* case. In this case, RTT was <u>unaware</u> of Brenntag's terms and conditions until Brenntag filed its answer in this case. (Response to Concise Statement, ¶ 4.) The parties had never discussed the terms and conditions let alone negotiated them. (*Id.*) Prior to Brenntag's purchase of Quadra, RTT had purchased the <u>same products</u> from Quadra from the <u>same sales person</u> and without any limitation of liability or waiver of claims. (*Id.*) At no time after Brenntag acquired Quadra did anyone at Brenntag notify or alert RTT that Brenntag had changed the back side of the bills of lading and

---

contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made."

[5] Cal U Com Code § 2719(3) reads: "Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is invalid unless it is proved that the limitation is not unconscionable. Limitation of consequential damages where the loss is commercial is valid unless it is proved that the limitation is unconscionable."

**Jonathan G. Basham, P.C.**

745 NW Mt. Washington Drive #308
Bend, OR 97701
Telephone: 541.385.0914

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**    Page 8

invoices to include new and drastic terms and conditions. (*Id.*) Moreover, the terms and conditions were written in very small print and in fact were illegible on the back of the bills of lading. (*Id.*, ¶ 8.) While there was small print on the back of Quadra's bills of lading, such writing merely provided a limit of claims against the common carrier in the event of loss or damage to the product. (*Id.*, ¶ 7)

Under the foregoing circumstances, Brenntag's terms and conditions were effectively hidden. Furthermore, given Brenntag's failure to give RTT an opportunity to negotiate a single item of the terms and conditions, this Court should find that Brenntag's terms and conditions are procedurally unconscionable.

### 3. Brenntag's Terms and Conditions Were Substantively Unconscionable.

This Court should find that Brenntag's terms and conditions are substantively unconscionable as well. As between RTT and Brenntag, Brenntag was the only party that was aware of the terms and conditions. Those terms and conditions were completely in Brenntag's favor. Had RTT known about Brenntag's terms and conditions, it could have and would have purchased from some other distributor without the limitations of warranties, remedies, and damages as it had done for years with Quadra. Based on these facts, this Court should find that Brenntag's terms and conditions are unconscionable.

### 4. Brenntag's Remedy Provision Failed Of Its Essential Purpose.

A seller/distributor may limit a buyer's remedies under ORS 72.7190, provided such limited remedies do not fail of their essential purpose:

> Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in the Uniform Commercial Code.

ORS 72.7190(2)[6]. When a limited remedy fails of its essential purpose, a buyer is entitled to all available remedies, including consequential damages, under the *UCC*. *See RRX Industries, Inc.*

---

[6] Cal U Com Code § 2719(2) reads: "(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this code."

*v. LAB-CON, Inc.*, 772 F.2d 543 546-547 (9th Cir 1985)(interpreting California's version of ORS 72.7190(2)).

By design, the meager remedy Brenntag provided to RTT in its terms and conditions was doomed to fail.  Brenntag knew at all times that RTT's use of the sorbitol was as an additive to RTT's spices.  (Response to Concise Statement, ¶ 18.)  Nevertheless, Brenntag inserted in its terms and conditions that "NO CLAIM SHALL BE ALLOWABLE AFTER ANY SUCH PRODUCT HAS BEEN PROCESSED IN ANY MANNER."  (Aff of Todd Goodew, ¶ 10.)  Thus, the remedy Brenntag provided, i.e., return of the product for credit, would never be available to RTT given the Malaysian sorbitol's latent defect.  (*Id.*)

Pursuant to ORS 72.7190(2), RTT should be allowed to pursue all of its remedies, including recovery of its damages.

### F.      Brenntag's Cited Authority Dictates a Denial of Its Motion.

Brenntag argues that its terms and conditions require the application of California law and places great emphasis on *Nunes Turfgrass, Inc. v. Vaughan-Jacklin Seed Co.*, 200 Cal App 3d 1518, 246 Cal Rptr 823 (1988), for its proposition that it is entitled to summary judgment on its terms and conditions.[7]  However, the *Nunes* Court held:

> The determination of whether the limitation or exclusion of consequential damages for commercial loss is unconscionable, or not, in a particular case is a factual issue for the trier of fact.

*Nunes*, 200 Cal App 3d at 1539, 246 Cal Rptr at 837.

Thus, even Brenntag's own authority dictates a denial of its motion.

## II.  CONCLUSION

Based on the pleadings in the Complaint, the material issues of fact presented in this case, and the overwhelming evidence that Brenntag's terms and conditions were inconspicuous, unconscionable, and unreasonable, this Court should deny Brenntag's motion and hold that ORS

---

[7] Under Oregon law, the issue of unconscionability may be an issue of law rather than one of fact.  *See* ORS 72.3020.

Jonathan G. Basham, P.C.

745 NW Mt. Washington Drive #308
Bend, OR 97701
Telephone: 541.385.0914

**PLAINTIFF'S RESPONSE TO DEFENDANT'S       Page 10
MOTION FOR PARTIAL SUMMARY JUDGMENT**

30.900 does not preclude RTT from pursuing a products liability claim simultaneously with its UCC claims and that Brenntag's terms and conditions are unenforceable.

DATED this 20th day of March, 2009.

JONATHAN G. BASHAM, P.C.

BY <u>/s/ Jonathan G. Basham</u>
Jonathan G. Basham
OSB #90038
Telephone: 541.385.0914
Attorney for Plaintiff

**Jonathan G. Basham, P.C.**

745 NW Mt. Washington Drive #308
Bend, OR 97701
Telephone: 541.385.0914

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

**Page 11**

**EXHIBIT A**

```
                                                                    1
                    UNITED STATES DISTRICT COURT

                         DISTRICT OF OREGON

     RTT CORPORATION, an Oregon        )
     corporation, doing business as    )
     Rocky Mountain Products,          )
                                       )
                 Plaintiff,            ) No. 08-CV-6291-AA
                                       )
          vs.                          )
                                       )
     BRENNTAG PACIFIC, INC., a         )
     Delaware corporation,             )
                                       )
                 Defendant.            )




                  DEPOSITION OF SAM DeBELLIS, JR.

                  Taken in behalf of the Plaintiff

                         March 13, 2009
```

                                                                2

1      BE IT REMEMBERED that the deposition of SAM

2   DeBELLIS, JR. was taken before Kimberly J. Allen, RPR, CSR,

3   CRR, on March 13, 2009, commencing at the hour of

4   10:30 a.m., in the conference room of the law firm of

5   Bullivant Houser Bailey, in the City of Portland, County of

6   Multnomah, State of Oregon.

7                              -:-

8                         APPEARANCES:

9

10   JONATHAN G. BASHAM PC
     Jonathan G. Basham
11   745 NW Mt. Washington Dr.
     Suite 308
12   Bend, OR  97701
     541-385-0914
13       Counsel for Plaintiff

14

15   BULLIVANT HOUSER BAILEY
     Leta Gorman
16   888 SW Fifth Avenue
     Suite 300
17   Portland, OR  97204
     503-499-4469
18       Counsel for Defendant

19
     MONTGOMERY MCCRACKEN WALKER & RHOADS, LLP
20   Ronald E. Hurst
     123 S. Broad Street
21   Avenue of the Arts
     Philadelphia, PA  19109
22   215-772-7242
         Counsel for Defendant
23

24

25

Sam DeBellis, Jr. March 13, 2009
RTT Corp. v. Brenntag Pacific, Inc. No. 08-CV-6291-AA

19

1    as Exhibit 1-A?
2         A.   Yes.
3         Q.   And is that your affidavit that you've had
4    filed in this case?
5         A.   Yes.
6         Q.   Now, on Exhibit C to your affidavit, can you
7    identify that?
8         A.   It's -- actually, it's a bit difficult to
9    read.
10             Am I looking at the right --
11        Q.   Yeah, that's -- that's it.
12        A.   Okay.
13             MS. GORMAN:  If you need to look at the entire
14   document to determine what that is --
15             THE WITNESS:  Okay.  Okay.
16             MS. GORMAN:  -- and/or your affidavit.
17             THE WITNESS:  Okay. (Reviewing document.)
18             Okay -- well, okay.  It looks like -- is
19   this --
20             MS. GORMAN:  I want you to go ahead and read
21   your affidavit before you --
22             THE WITNESS:  Okay.
23             MS. GORMAN:  I don't want you to guess or
24   speculate to --
25             THE WITNESS:  All right.  All right.