FILED'09 MAY 11 09:00USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RTT CORPORATION, an Oregon          Civil No. 08-6291-AA
corporation, doing business as          OPINION AND ORDER
Rocky Mountain Products,

         Plaintiff,

    vs.

BRENNTAG PACIFIC, INC., a Delaware
corporation,

         Defendant.

_____

Jonathan G. Basham
Jonathan G. Basham, P.C.
745 NW Mt. Washington Drive #308
Bend, Oregon 97701
     Attorney for RTT Corporation

Leta E. Gorman
Bullivant Houser Bailey, P.C.
300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
     Attorney for Brenntag Pacific, Inc.

AIKEN, Judge:

Plaintiff RTT Corporation doing business as Rocky Mountain Products ("RTT") filed suit against defendant Brenntag Pacific, Inc. ("Brenntag") alleging breach of contract, breach of warranty of merchantability, and breach of implied warranty of fitness for a particular purpose. Brenntag moves for partial summary judgment on RTT's claims.[1] First, Brenntag argues RTT's claims are product liability claims cast as contract claims and should be dismissed because the damages sought are purely economic. In the alternative, Brenntag requests summary judgment declaring (1) the Terms and Conditions on the bills of lading and invoices apply to the parties' transactions; and (2) the Limitations of Liability contained within the Terms and Conditions are valid and enforceable. Brenntag's motion for partial summary judgement is denied. Also, RTT moves for a Protective Order. That motion is granted as described below.

<u>BACKGROUND</u>

RTT is a corporation registered under the laws of Oregon with its principle place of business in Deschutes, Oregon. RTT manufactures food seasonings containing sorbitol, a sugar substitute. Todd and Tama Goodew are principals of RTT. Joyce Lancaster is the office manager of RTT.

From 2001 through 2005, Quadra Chemical, Inc. ("Quadra") supplied sorbitol to RTT. In October 2005, Brenntag acquired

Quadra and became RTT's sorbitol supplier.  Brenntag retained Sam

Debellis, Jr. ("Debellis"), Quadra's employee,  who had been

RTT's account manager.  RTT's principals continued to do business

with Debellis on behalf of RTT.

On January 23, 2007, RTT's office manager, Joyce Lancaster,

signed a proposal summarizing Brenntag and RTT's annual sorbitol

supply agreement ("supply agreement").  Plaintiff's Response,

Affidavit of Todd Goodew, Exhibit C.  The summary of the supply

agreement includes pricing validity, payment, storage, delivery,

support, annual volume, and arrangements to prepay freight.  Id.

However, the supply agreement failed to include or reference any

terms and conditions.

From May 2007 through March 2008, Brenntag supplied RTT with

allegedly defective sorbitol.  During this period, there were a

total of eleven sales documented by invoices.  Defendant's

Memorandum in Support, Affidavit of Sam Debellis, Jr., Exhibit A.

Each invoice includes terms and conditions on the back side of

the invoice.  In addition, Brenntag generally provided RTT with a

bill of lading, which included terms and conditions on the back

side of the document identical to those found on the invoice.

Id. at Exhibit B.  Generally, the bills of lading were signed by

an RTT representative upon delivery of the sorbitol.

RTT alleges the sorbitol had a latent defect that caused

food seasonings to chemically break down after 3-4 months and

appear spoiled.  As a result, RTT's customers returned the food
seasonings and stopped doing business with RTT.  The parties
dispute whether the terms and conditions on the invoices and
bills of lading apply to their transactions.

STANDARDS

Summary judgment is appropriate "if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law."  Fed. R. Civ. P.
56(c).  The materiality of a fact is determined by the
substantive law on the issue.  T.W. Elec. Serv., Inc. v. Pac.
Elec. Contractors Ass'n., 809 F.2d 626, 630 (9th Cir. 1987). The
authenticity of a dispute is determined by whether the evidence
is such that a reasonable jury could return a verdict for the
nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The moving party has the burden of establishing the absence
of a genuine issue of material fact.  Celotex Corp. v. Catrett,
477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  If
the moving party shows the absence of a genuine issue of material
fact, the nonmoving party must go beyond the pleadings and
identify facts which show a genuine issue for trial.  Id. at 324.
Special rules of construction apply to evaluating summary

judgment motions: (1) all reasonable doubts as to the existence
of genuine issues of material fact should be resolved against the
moving party; and (2) all inferences to be drawn from the
underlying facts must be viewed in the light most favorable to
the nonmoving party.  T.W. Elec., 809 F.2d at 630.

DISCUSSION

Brenntag's "product liability claim[2]" argument

     Brenntag argues RTT's claims are actually product liability
claims because RTT alleges the product is defective.
Additionally, Brenntag contends that RTT's claims should be
dismissed because RTT seeks only economic damages and economic
damages alone cannot support a product liability claim.

     The Supreme court held "[w]hen a product injures only itself
the reasons for imposing a tort duty are weak and those for
leaving the party to its contractual remedies are strong."  E.
River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 871
(1986).  "Damage to a product itself is most naturally understood
as a warranty claim.  Such damage means simply that the product
has not met the customer's expectations, or, in other words, that
the customer has received 'insufficient product value.'"  Id. at
872 (quoting White & Summers, Uniform Commercial Code 406 (2d ed.
1980)).

     Here, RTT complains only of damage to the product itself.
Accordingly, RTT's claim is "most naturally understood as a

warranty claim."  Id. at 872.  Brenntag's motion for partial
summary judgment on this issue is denied.

Terms and Conditions[3]

   The parties dispute whether the Terms and Conditions
included in the bills of lading and invoices are enforceable.
Brenntag asserts that these terms and conditions are the only
terms and conditions that govern and control the parties'
transactions.  RTT denies this.  In fact, RTT asserts that no one
at RTT was aware of these terms and conditions until Brenntag
filed its answer to this lawsuit.

   In addition, RTT asserts that no one at Brenntag ever
notified RTT of the terms and conditions and no single term was
ever negotiated.  Brenntag does not dispute this other than to
contend that RTT's principals, Todd Goodew and Joyce Lancaster,
signed the bills of lading.  RTT argues the supply agreement
governs and controls the parties' transactions, not the terms and
conditions included in the bills of lading and invoices.
Additionally, RTT argues the supply agreement neither contains
nor references any terms and conditions other than pricing
validity, payment, storage, delivery, support, annual volume, and
arrangements of prepaying freight.

   Finally, RTT argues the terms and conditions included in the
bills of lading and invoices are unenforceable because they are
inconspicuous, unconscionable, and unreasonable.

Formation

1. Mutual Assent

A genuine issue of material fact exists regarding whether RTT assented to the terms and conditions included in the bills of lading and invoices. Brenntag argues RTT is bound by the terms and conditions because under California law, "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties [sic] which recognizes the existence of such a contract." Cal U Com Code § 2204. Brenntag argues RTT accepted Brenntag's terms and conditions because RTT was provided with invoices and bills of lading containing the terms and conditions and RTT signed the bills of lading. Brenntag further asserts that there are no other documents, forms, or letters that alter the terms of the parties' contract and that RTT failed to object or except to Brenntag's terms and conditions.

Every contract requires mutual assent or consent, and ordinarily one who signs an instrument which on its face is a contract, is deemed to assent to all its terms. Marin Storage & Trucking, Inc. v. Benco Contractor & Eng'g, Inc., 89 Cal. App. 4th 1042, 1049 (Cal. App. 1st Dist. 2001). A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing. Id. See also A & M Produce Co. v. FMC Corp., 135 Cal. App. 3d 473, (Cal. App. 4th Dist. 1982) ("the

Page 7 - OPINION AND ORDER

mere fact that a contract term is not read or understood by the
non-drafting party or that the drafting party occupies a superior
bargaining position will not authorize a court to refuse to
enforce the contract."). However, an exception to this general
rule exists when the writing does not appear to be a contract and
the terms are not called to the attention of the recipient. <u>Id.</u>
at 1049-50. In those circumstances, no contract is formed with
respect to the undisclosed term(s). <u>Marin Storage</u>, 89 Cal. App.
4th at 1050 (<u>citing</u> <u>India Paint and Lacquer Co. v. United Steel
Prod. Corp.</u>, 123 Cal. App. 2d 597, 606-607, 610-611, 267 P.2d 408
(1954) ("[w]here sales transactions are entered into on the basis
of anterior warranties, it is universally held that an attempt to
disclaim the binding effect of such warranties upon or after
delivery of the goods, by means of language on an invoice,
receipt or similar notice, is ineffectual unless the buyer
assents or he is charged with knowledge of nonwarranty as to the
transactions.")).

In <u>Marin Storage</u>, the appellate court reversed the trial
court's finding that there was no mutual assent. <u>Marin Storage</u>,
89 Cal. App. 4th at 1050. <u>Marin Storage</u> involved a dispute over
short-term hourly crane rental agreements containing an indemnity
provision. <u>Id.</u> at 1046. The indemnity provision was included on
a form labeled "Work Authorization and Contract." <u>Id.</u> at 1047.
At the bottom of the form, just above the signature line, was the

statement, "This is a contract which includes all terms and
conditions stated on the reverse side." Id.  The president of the
company testified that until the accident he had never noticed
the indemnity provisions on the back of the Work Authorization
and Contract forms.  Id. at 1048.

The appellate court held the agreement was clearly a
contract because it was labeled "Work Authorization and
Contract." Id. at 1050.  In addition, the court gave great
weight to the parties' course of dealing, that the purchaser had
ample opportunity to examine the back side of the form, and by
its conduct in paying the invoices generated from the Work
Authorization and Contract forms, the purchaser acknowledged the
existence of a contract.  Id.  Based on this, the court held
"these outward manifestations of assent by the [purchaser]
confirmed its acceptance of the contractual terms." Id. at 1052.
The Ninth Circuit holds, however, that in some instances a course
of dealing analysis is improper.  In re CFLC, Inc., 166 F.3d 1012
(9th Cir. 1999).  There, the court held "a course of dealing
analysis is not proper in an instance where the only action taken
has been the repeated delivery of a particular form by one of the
parties." Id. at 1017 (citing Step-Saver Data Sys., Inc. v. Wyse
Tech., 939 F.2d 91, 103-04 (3d Cir. 1991)).

Here, similar to the president in Marin Storage, RTT alleges
it was unaware of the terms and conditions contained in the bills

of lading and invoices until Brenntag filed its answer to the
complaint.  However, unlike the form discussed in Marin Storage,
neither the invoice nor the bill of lading are labeled as
contracts or contain any language indicating it is a contract.
The invoice is labeled "INVOICE" and the bill of lading is
labeled "Bill of Lading/Shipping Receipt."  These writings do not
appear on their face to be contracts and Brenntag has not
disputed that it failed to make RTT aware of the terms.  In
addition, I find the analysis regarding the parties' course of
dealing as discussed in Marin Storage inapplicable because the
only action taken by Brenntag was the repeated delivery of bills
of lading and invoices.  In re CFLC, 166 F.3d at 1017.
Accordingly, I find RTT's conduct of paying invoices and signing
bills of lading insufficient to show as a matter of law RTT's
acknowledgment and acceptance of the terms and conditions.[4]
Moreover, a genuine issue of material fact remains as to whether
RTT assented to the disclaimer, or whether based on the facts and
circumstances surrounding the transaction, RTT should be charged
with such knowledge.  Therefore, Brenntag's motion for partial
summary judgment on this issue is denied.

2. Additional Terms

     A genuine issue of material fact similarly exists regarding
whether Brenntag's terms and conditions included in the bills of
lading and invoices materially alter the parties' prior

agreement(s). Brenntag argues under California law, "[b]etween merchants [additional] terms become part of the contract unless: (a) The offer expressly limits acceptance to the terms of the offer; (b) They materially alter it; or (c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received." Cal U Com Code § 2207(2). See also ORS 72.2070.

Here, both parties are merchants so additional terms become part of the contract, unless those terms materially alter the contract. Comment four to § 2207 provides examples of clauses that materially alter a contract because they would result in surprise or hardship to the purchaser without express awareness.[5] Likewise, comment five to § 2207 provides examples of clauses that involve no element of unreasonable surprise and are therefore incorporated into the contract.[6]

In the case at bar, a genuine issue of material fact exists regarding whether Brenntag included additional terms in its bills of lading and invoices that materially alter the parties' prior agreement(s). The following provisions found in Brenntag's bills of lading and invoices are similar to those discussed in comment four as examples of provisions that would materially alter a contract:

    4.    <u>Suspension of Credit or Shipment</u>
          Seller may at any time alter or suspend credit to
          Purchaser, stop shipment to Purchaser in transit, or
          delay or refuse to ship to Purchaser, or cancel any or

all unfilled orders when in Seller's sole opinion:
a.    the financial condition of Purchaser is unsatisfactory to seller;
b.    delivery is delayed by fault of Purchaser;
c.    Purchaser is delinquent in payment of any obligation owed to Seller; or
d.    sale of products or materials to Purchaser may result in environmental, safety or health danger or hazard.

5.    <u>Warranty</u>
Seller warrants that the products or materials delivered meet the standard specifications of the manufacturer(s) for the products or such other specifications as may have been expressly agreed to in writing by Purchaser and Seller.  SELLER MAKES NO WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, OR ANY OTHER EXPRESS OR IMPLIED WARRANTY.  Purchaser assumes all risk and liability resulting from the handling, use, or storage of the products delivered hereunder, whether used, handled or stored singly or in combination with other products, and Purchaser agrees to indemnify and hold Seller harmless against any and all loss, damages, liability, cost and expense (including reasonable attorneys' fees), arising out of such use, handling or storage.

6.    <u>LIMITATIONS OF LIABILITY</u>
a.    PURCHASER HEREBY WAIVES ANY CLAIM AGAINST SELLER FOR CONSEQUENTIAL DAMAGES, LOSS OR FOR DAMAGE TO GOODWILL OR ANY OTHER SPECIAL, DIRECT, INDIRECT OR INCIDENTAL DAMAGES, EVEN IF SELLER HAS BEEN ADVISED OF OR HAS NOTICE OF THE POSSIBILITY OF SUCH DAMAGES AND PURCHASER'S EXCLUSIVE REMEDY WITH RESPECT TO ANY CLAIM, WHETHER IN CONTRACT, TORT OR STRICT LIABILITY OR OTHERWISE, IN RESPECT OF THE PRODUCTS SOLD HEREUNDER SHALL BE EXPRESSLY LIMITED TO THE AMOUNT OF THE PURCHASE PRICE OF SUCH PRODUCT OR THE REPLACEMENT OF SUCH PRODUCT.
b.    FAILURE OF PURCHASER TO GIVE WRITTEN NOTICE OF SUCH CLAIM TO SELLER WITHIN 30 DAYS FROM THE DATE OF DELIVERY OF SUCH PRODUCT SHALL CONSTITUTE A WAIVER BY PURCHASER OF ALL CLAIMS IN RESPECT OF SUCH PRODUCT. NO PRODUCT SOLD HEREUNDER SHALL BE RETURNED TO THE SELLER WITHOUT SELLER'S PERMISSION. NO CLAIM SHALL BE ALLOWABLE AFTER ANY SUCH PRODUCT HAS BEEN PROCESSED IN ANY MANNER.

Defendant's Reply, Declaration of Sam Debellis, Jr., Exhibit 4
(emphasis in original).

These provisions may materially alter the parties' prior
agreement(s), but without aide of the terms and conditions
bargained for in the supply agreement or the parties' other
agreement(s), I cannot rule on this issue as a matter of law.
Therefore, a genuine issue of material fact remains as to whether
Brenntag's additional terms contained in the bills of lading and
invoices materially alter the parties' prior agreement(s).
Therefore, Brenntag's motion for partial summary judgment is
denied.

Protective Order

RTT requests a protective order protecting it from
disclosing its recipes.  Generally, "courts have not given trade
secrets automatic and complete immunity against disclosure, but
have in each case weighed their claim to privacy against the need
for disclosure.  Frequently, they have been afforded a limited
protection."  Fed. Open Market Comm. of Fed. Reserve Sys. v.
Merrill, 443 U.S. 340, 362 (1979) (quoting Advisory Committee's
Notes on Fed. Rule Civ. Proc. 26, 28 U.S.C. App., p. 444; 4 J.
Moore, Federal Practice ¶ 26.75, pp. 26-540 to 26-543 (1970)).

Under Fed. R. Civ. Proc. 26(c), courts are authorized to
protect parties from "undue burden" in discovery by ordering "a
trade secret ... not be disclosed or be disclosed only in a

designated way." Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1469-70 (9th Cir. 1992). The parties agree RTT's recipes are protectable trade secrets, and both parties have offered proposed protective orders.

Therefore, I must balance the risk to RTT of inadvertent disclosure of trade secrets to competitors against the risk to Brenntag that protection of RTT's trade secrets will impair Brenntag's defense.

Brenntag argues it needs the recipes to determine whether the seasoning clumping was caused by ingredient incompatibility, a blending process, the seasoning bottle, or some other factor. Brenntag's proposed protective order allows disclosure to its client, another lawyer representing the client, an employee of the lawyer representing the client, and an expert witness.

At this juncture, although RTT's recipes are indeed entitled to some protection, I find that absolute protection of the recipes is unnecessarily restrictive. Accordingly, a protective order should enter restricting access of RTT's recipes to the following: Brenntag's counsel (including counsel's employees), a representative of Brenntag Pacific, Inc., and expert witness(es). As discovery proceeds, the parties may return to the court to request that the protective order be modified as needed.

///
///

Page 14 - OPINION AND ORDER

///

///

///

///

///

<u>CONCLUSION</u>

Defendant Brenntag's motion for partial summary
judgment (doc. 18) is denied.  Plaintiff RTT's motion for
protective order (doc. 31) is granted as specified above.  The
parties' request for oral argument is denied as unnecessary.
IT IS SO ORDERED.

Dated this ∓ day of May 2009.

_____
Ann Aiken
United States District Judge

[1]Brenntag requests partial summary judgment because its counterclaim
against RTT would remain even if RTT's claims are disposed of.

[2]The following discussion does not address the merits of a product
liability claim as plaintiff has not plead one.

[3]Paragraph ten (10) of the terms and conditions dictates that California
law governs and controls the interpretation and enforcement of the terms and
conditions.  Defendant's Reply, Declaration of Sam Debellis, Jr., Exhibit 4.
The parties do not dispute that California law applies to the instant dispute.
Accordingly, I will consider validity and enforcement of the terms and
conditions under California law.

Page 15 - OPINION AND ORDER

[4]Notably, "[i]f the seller truly does not want to be bound unless the buyer assents to its terms, it can protect itself by not shipping until it obtains that assent."  See Diamond Fruit Growers, Inc. v. Krack Corp., 794 F.2d 1440, 1444-45 (9th Cir. 1986).  See also Textile Unlimited, Inc. v. A..BMH & Co., Inc., 240 F.3d 781 (9th Cir. 2001).

[5]"4. Examples of typical clauses which would normally "materially alter" the contract and so result in surprise or hardship if incorporated without express awareness by the other party are: a clause negating such standard warranties as that of merchantability or fitness for a particular purpose in circumstances in which either warranty normally attaches; ... a clause reserving to the seller the power to cancel upon the buyer's failure to meet any invoice when due; a clause requiring that complaints be made in a time materially shorter than customary or reasonable."

[6]"5. Examples of clauses which involve no element of unreasonable surprise and which therefore are to be incorporated in the contract unless notice of objection is seasonably given are: a clause setting forth and perhaps enlarging slightly upon the seller's exemption due to supervening causes beyond his control, similar to those covered by the provision of this Article on merchant's excuse by failure of presupposed conditions or a clause fixing in advance any reasonable formula of proration under such circumstances; a clause fixing a reasonable time for complaints within customary limits, or in the case of a purchase for sub-sale, providing for inspection by the subpurchaser; a clause providing for interest on overdue invoices or fixing the seller's standard credit terms where they are within the range of trade practice and do not limit any credit bargained for; a clause limiting the right of rejection for defects which fall within the customary trade tolerances for acceptance "with adjustment" or otherwise limiting remedy in a reasonable manner (see Sections 2-718 and 2-719)."

Page 16 - OPINION AND ORDER